696 So.2d 466 (1997)
Daniel R. GANDUL, Appellant,
v.
Judith A. GANDUL, Appellee.
No. 96-1592.
District Court of Appeal of Florida, Third District.
July 2, 1997.
*467 Barney B. Avchen, Hialeah, for appellant.
Peter C. Bianchi, Jr. and Jennifer K. Sardinia, Coral Gables, for appellee.
Before COPE, GERSTEN and SHEVIN, JJ.
COPE, Judge.
Appellant Daniel R. Gandul, the husband in this dissolution action, appeals a final judgment: 1) awarding both rehabilitative and lump sum alimony to appellee Judith A. Gandul; and 2) unequally distributing the parties' property. We affirm the dissolution of the marriage, but reverse the award of alimony and the equitable distribution.
The husband contends that the rehabilitative alimony award and equitable distribution are so one sidedly in favor of the wife that he has been unreasonably shortchanged, and has passed from prosperity to misfortune. See Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980). We agree and reverse on this issue.
This was a thirteen-year marriage in which the husband worked and the wife did not. The husband has an associate's degree and the wife a bachelor's degree. The parties were thirty-seven years old at the time of the dissolution of marriage. The rehabilitative plan for the wife is to pursue a two-year fulltime course of study at the Miami Art Institute *468 and thereafter to pursue a career in graphic design.
The parties' major asset was their three bedroom, two bath home with an equity of $55,000. The only other significant asset was the husband's 401K account worth $15,000.
The husband's net base pay was $2,562 per month. Counting his annual bonus, the husband's net income was $3,309 per month.
At the final hearing, the trial court stated that it was obvious the marital home should be sold and the proceeds appropriately divided. Thereafter, however, the court entered a final judgment awarding the home and its entire equity to the wife. The husband was awarded his 401K plan. The net effect was to award the wife almost 80 percent of the marital assets.
The court entered a rehabilitative alimony award of $2,300 per month for two years. This amounts to $55,200. After completion of the two-year course of study, there would be rehabilitative alimony of $1,800 per month for an additional two years. This amounts to $43,200. This was intended to be a "bridgethe-gap" award to assist the wife as she entered the working marketplace. The $2,300 per month rehabilitative alimony award consumes almost all of the husband's base pay, and 70 percent of the husband's net income after annualizing the once-a-year bonus.
We think the trial court abused its discretion in the awards in this case. Because the wife did not work during the marriage, she was properly entitled to rehabilitative alimony to assist her in rejoining the work force. Sumner v. Sumner, 480 So.2d 706 (Fla. 5th DCA 1986). The husband does not dispute the need for the rehabilitative program, which is aimed at providing needed skills in computer graphics, and upgrading the wife's portfolio. However, as stated in Canakaris v. Canakaris, it was the trial court's duty to "ensure that neither spouse passe[d] automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, [that] one spouse ... not be `shortchanged.' "382 So.2d at 1204.
Here, the wife has been awarded almost 80 percent of the parties' assets and 70 percent of the husband's income in the initial rehabilitative period. This leaves the husband with a very marginal living income while providing the wife the three bedroom, two bath home in which she resides alone, plus the entire equity in the home, plus a four-year $98,400 rehabilitative award to be paid entirely from the husband's current income.
We agree with the trial court's original oral pronouncement that it is obvious that the marital home must be sold. It is a three bedroom, two bath dwelling now inhabited only by the wife. There are no children of the marriage. It is the parties' major asset. The husband's share of the equity is an obvious source of funds for payment of rehabilitative alimony (so as to reduce the husband's payments from current income). The wife's share would provide her a financial cushion during her schooling and has a bearing on the amount of living expenses needed while in the educational program. Given the size of the rehabilitative award in comparison with the husband's income, the trial court should revisit the question of whether the husband should bear the entire financial burden or whether the wife should bear a share.
Pending sale of the house, we direct that there be an interim reduction in the husband's monthly rehabilitative alimony payments so that the husband has a reasonable amount of money on which to live. This interim reduction must be accomplished within thirty days of the date hereof. As there is ample equity in the home, one possibility is borrowing against the equity to carry part of the expenses of the rehabilitative program until the house is sold. An educational loan may be another possibility. In any event, the husband is entitled to a reasonable living allowance.
We also reverse the rehabilitative alimony award for the second two years, and direct that the trial court revisit both the amount and duration of this "bridge-the-gap" provision. During the first two years, the $2,300 per month award has the following components: $1,000 per month for tuition; $1,000 per month for living expenses; $300 per month for medical insurance. Upon completion *469 of the two-year program, the wife is to begin working. During this "bridge-the-gap" period, the wife will no longer be paying tuition. However, even though the wife will now be working and earning an income, the award for living expenses increases to $1,500 per month. Since at this point it is contemplated that the wife would be earning income, it is not clear why the living allowance is to be increased instead of being reduced and why it lasts for two additional years. On remand the trial court shall reduce the "bridge-the-gap" amount of living expenses to a reasonable level and duration.
The rehabilitative alimony award includes $300 per month for medical insurance. The husband complains first, that he was required to pay this amount for some months when the wife was still covered under his medical insurance policy. We agree that the award must abate for the months in which the husband's policy provided coverage. Second, we note that after the wife completes her educational program and begins employment, the husband is required to continue paying this amount, apparently even if medical insurance is provided by the wife's employer. The payments should abate in the event that the wife's employer provides medical insurance.
Finally, we observe that paragraph twelve of the final judgment is not supported by the record, and strike it. The judgment states that the trial court found the husband unworthy of belief in testifying that he only had $800 in his bank account even after receiving his annual bonus for 1996, an escrow refund, and proceeds from a loan against his 401K plan. However, when the various findings of the final judgment are analyzed, the trial court explicitly found that the husband was running a deficit of $500 to $900 per month after paying his own monthly living expenses plus a temporary support award of $2,500 per month to the wife. Since this particular finding is contrary to the established facts of record, we strike it.
In sum, while we recognize that the wife is entitled to fair rehabilitative alimony and an equitable portion of the parties' property, we think that the present awards cannot be sustained.
The final judgment is affirmed in so far as it dissolves the parties' marriage. The final judgment is reversed in all other respects and remanded for further proceedings consistent herewith.