730 So.2d 748 (1999)
John George BORCHARD, Appellant,
v.
Kristine BORCHARD, Appellee.
No. 97-04579.
District Court of Appeal of Florida, Second District.
March 12, 1999.
Rehearing Denied April 21, 1999.
*749 Eileen H. Griffin of Griffin & Associates, P.A., Brandon, for Appellant.
Michael L. Hastings of Hastings & Estreicher, P.A., St. Petersburg, for Appellee.
ALTENBERND, Acting Chief Judge.
John George Borchard appeals the final judgment of dissolution of his marriage to Kristine Borchard. He challenges the trial court's decision to allow his former wife to relocate with their minor children to the state of Arizona. He also challenges the trial court's use of installment, lump sum alimony as bridge-the-gap alimony. We affirm both decisions. This court has never expressly authorized the use of rehabilitative alimony as a form of bridge-the-gap alimony because such alimony does not contemplate a true plan of rehabilitation. However, we see no reason why a trial court cannot utilize lump sum alimony, even if it must be paid in a few installments, to help one spouse adjust financially to life after marriage. Like any other award of alimony, the trial court's decision to use such lump sum alimony must be a reasoned, discretionary decision compatible with the factors delineated in section 61.08(2), Florida Statutes (1997).

I. RELOCATION
Mr. and Mrs. Borchard met while attending Northern Arizona University. Mrs. Borchard had been raised in Arizona, and Mr. Borchard in California. They married in 1991 and, after a brief sojourn in California, moved to Florida. Mr. Borchard started a *750 strawberry brokerage business. His family owns an agricultural business in California, and the Florida operation was a logical extension of that business.
The Borchards' first child was born in December 1992, and a second child was born in January 1996. The couple had marital difficulties almost from the inception of the marriage. By the time the second child was born, the marriage had failed. Mrs. Borchard filed a petition for dissolution of marriage in September 1995. In April 1997, she filed an amended petition seeking primary parental responsibility for both children and requesting permission to relocate to Arizona. The final hearing was held on several dates between May and July of 1997. On August 12, 1997, the trial court entered a final judgment of dissolution that gave Mrs. Borchard custody of the children and permitted her to return to Arizona.
Section 61.13(2)(d), Florida Statutes (1997), took effect on July 1, 1997. See ch. 97-242, Laws of Fla. That enactment eliminated any evidentiary presumption that may have existed in favor of the relocating parent under prior case law and slightly modified the six factors delineated in Mize v. Mize, 621 So.2d 417 (Fla.1993), which trial courts utilize in deciding whether to permit a primary residential parent to relocate. The statute, however, continues to require the trial court to determine, as the sixth factor, whether the move would be in the best interest of the child. See § 61.13(2)(d)(6), Fla. Stat. (1997). It is obvious that these factors are not separate and distinct mathematical elements in an equation and that the sixth factor is a "generalized summary of the previous five." Mize, 621 So.2d at 420. We conclude that the trial court adequately considered the statutory factors and made an affirmable, discretionary decision.
We comment that this appeal was filed in October 1997. No attempt was made by the parties to expedite the appeal. Even if the parties had requested an expedited appeal, it may have been difficult for this court to expedite such an appeal of a final order, in part because the parties requested oral argument.[1] In this particular case, it has been difficult to expedite the ruling on custody because of the complexity of the second issue.
This case suggests that the Appellate Court Rules Committee and the Family Law Rules Committee of the Florida Bar might consider a method to allow a more expedited review of the relocation issue when the primary custodial parent plans to reside in a location that will result in substantially curtailed contact with the other parent. If we had found an error in this final judgment concerning the issue of relocation, it would have been very traumatic for both the mother and children to return to Florida after living in Arizona for more than a year. Moreover, the trial court's decisions concerning alimony and child support were based on the assumption that the mother and children would return to Arizona to be near Mrs. Borchard's family. A reversal of the issue concerning relocation would have necessitated a reversal of the entire judgment. We do not wish to encourage unnecessary appeals of such relocation issues, but a limited method to review these issues prior to the entry of a final judgment might have merit. Cf. Fla. R.App. P. 9.130(a)(3)(C)(iii) (permitting appeal of nonfinal order that determines "child custody in family law matters").

II. LUMP SUM ALIMONY
Mrs. Borchard sought permanent, rehabilitative or lump sum alimony. The trial court rejected permanent periodic alimony in this short-term marriage of five years and concluded that Mrs. Borchard's rehabilitative plan would have resulted in less income than she was capable of earning with her existing college degree. There is no issue that the trial court properly denied these forms of alimony.
However, the trial court awarded $25,000 as "lump sum alimony payable by the Husband directly to the Wife at the rate of $1,000 per month." The trial court awarded this alimony "after review of all statutory criteria" and finding that "the Wife needs *751 financial help during her transition to being a single mom." There is no question that Mr. Borchard has the ability to pay this alimony and Mrs. Borchard needs this money. The only issue is whether the trial court had the authority to make this award. We conclude that it did.
Section 61.08, Florida Statutes (1997), is the statutory authorization for alimony. It states, in relevant part:
(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both.... In all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony.
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party. The court may consider any other factor necessary to do equity and justice between the parties.
This statute makes clear that lump sum alimony is not actually a third type of alimony, in addition to rehabilitative or permanent alimony. It is primarily a means to accomplish the ends of rehabilitative or permanent alimony; it is a judicial tool or method used to fulfill the legislative policies contained in the two types of alimony. Its use can be compared or contrasted to the use of periodic payments.
Because lump sum alimony establishes a specific, fixed monetary obligation in the final judgment, this tool causes lump sum alimony to have at least two major substantive differences from periodic alimony; the amount awarded is immediately vested and non-modifiable, and this form of alimony does not terminate upon the death of the payor or the remarriage of the payee. See Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984). Although the name suggests that lump sum alimony must always be payable in one lump sum, the trial court has authority to permit the payor to pay the lump sum in installments, comparable to an installment promissory note. See Donoff v. Donoff, 691 So.2d 1091 (Fla. 4th DCA 1997); Paetzold v. Paetzold, 673 So.2d 888 (Fla. 2d DCA 1996); Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988).
Although an award of lump sum alimony may be rehabilitative, the award in this case is "permanent in nature." The trial court's judgment in this case awards permanent lump sum alimony, payable in installments.[2]
In assessing the use of lump sum alimony to bridge the gap between married life and single life, it is significant to note that the intended legislative function of lump sum alimony appears to have evolved over the last fifty years. The first statutory authorization *752 for lump sum alimony occurred in 1947. See ch. 23894, § 1, Laws of Fla. (1947); § 65.08, Fla. Stat. (1949) ("In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in lump sum."). At that time, Florida had no statute comparable to our current method of equitable distribution. See § 61.075, Fla. Stat. (1997). Even when the supreme court discussed lump sum alimony in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), the statutory guidelines for dividing marital assets through equitable distribution did not exist. See ch. 61, Fla. Stat. (1981). The legislature did not authorize equitable distribution of marital assets and liabilities until October 1, 1988. See ch. 88-98, Laws of Fla.
Because statutory equitable distribution is of recent origin, the case law discussing lump sum alimony primarily discusses it as a primitive method of equitable distribution. In Canakaris, the court stated that it was primarily utilized "to ensure an equitable distribution of property acquired during the marriage." Canakaris, 382 So.2d at 1201. See also Philipose v. Philipose, 431 So.2d 698 (Fla. 2d DCA 1983) (upholding award of lump sum alimony made in an effort to make an equitable division of marital assets); Noe v. Noe, 431 So.2d 657 (Fla. 2d DCA 1983) (lump sum alimony may be awarded as means of ensuring an equitable distribution of property acquired during the marriage). Judges and lawyers, at least in loose discussion, continue to rely upon the concept of lump sum alimony as a means of equitable distribution. Nevertheless, under current statutes, if marital assets and liabilities cannot be equally divided pursuant to section 61.075, it is the better practice to award an equalizing monetary payment as an aspect of equitable distribution-not to intermingle asset distribution issues with alimony issues.[3]
In this case, it is clear that the $25,000 was not an award in the nature of an equalizing payment for equitable distribution. Thus, the case law in which lump sum alimony actually functions as a form of equitable distribution is of little or no value.
Because the legislature has continued to give judges the power to order lump sum payment of permanent or rehabilitative alimony in section 61.08 after creating section 61.075, the legislature must intend for lump sum payments to have a function separate and apart from equitable distribution.[4] Although other functions may exist, we hold that such payments of permanent lump sum alimony can be used as a means to assist the transition of a spouse from marital status to single status in cases where this need is demonstrated.
By way of example, there are some cases in which a spouse will have an immediate need for a lump sum payment to cover the expenses created by the transition to single life. For example, the expenses associated with replacing household items, buying or leasing an automobile, moving and making necessary deposits for an apartment or for utilities can often drain the marital assets distributed to a spouse.[5] Even worse, when the distribution of marital assets is meager, a spouse with little or no credit history may be *753 in need of basic living requirements and lack the ability to purchase them. When a spouse needs no true rehabilitation, but has recently re-entered the work force at a temporarily lower rate of pay, a lump sum award may be appropriate. As a final example, there are times when the shift in economic lifestyle caused by a divorce is so dramatic for one spouse, that he or she may reasonably need monetary help while adjusting to a more Spartan lifestyle.
We are aware that the First, Third and Fourth Districts have recognized an award of rehabilitative alimony in order to "bridge the gap" between married and single life. See Barner v. Barner, 716 So.2d 795 (Fla. 4th DCA 1998); Shea v. Shea, 572 So.2d 558 (Fla. 1st DCA 1990); Iribar v. Iribar, 510 So.2d 1023 (Fla. 3d DCA 1987).[6] The Fifth District has held that "[t]here is no support in law or logic for such an award as rehabilitative alimony." Martin v. Martin, 582 So.2d 784, 786 (Fla. 5th DCA 1991). But see Vick v. Vick, 675 So.2d 714 (Fla. 5th DCA 1996) (affirming award of "transitional" alimony when husband opposed rehabilitative alimony but represented wife may be entitled to "transitional" alimony). This court has never expressly affirmed an award of bridge-the-gap alimony, and some have read our dicta in Zelahi v. Zelahi, 646 So.2d 278 (Fla. 2d DCA 1994), as a suggestion that it cannot be awarded. In Zelahi, we simply held that a particular plan of rehabilitation would be appropriate only if it contained something more than payments to bridge the gap. See also Lash v. Lash, 307 So.2d 241 (Fla. 2d DCA 1975) (an award of rehabilitative alimony presupposes potential for self-support).
We still believe that rehabilitative alimony requires a plan more specific than bridging the gap. On the other hand, we suspect that trial courts in our district have felt compelled to fashion artificial plans of rehabilitation merely to extend bridge-the-gap alimony to deserving spouses. We also suspect that some awards of permanent periodic alimony, especially in the shorter "gray area" cases, are granted by trial judges who would prefer to grant a lump sum permanent alimony with installment payments. Hopefully, this opinion will make clear to the trial courts that they have no need to disguise their reasoning.
We caution that bridge-the-gap alimony is not a tool to compromise adversarial positions, but to assist a spouse with any legitimate, identifiable, short-term need under circumstances where a lump sum award is reasonable and when the other spouse has the ability to pay the award. Likewise, it is not merely another arrow in the lawyer's quiver designed to encourage disputes over who should pay for the new toaster. It is a useful tool in a relatively small category of divorces. If it is abused, the legislature would be wise to eliminate this category because its cost could outweigh its benefit.
Although the award of lump sum alimony in this case could have been supported with better findings in the judgment or in the record, we conclude that it was not an unreasonable act of discretion on the part of the trial judge and accordingly we affirm that decision.
BLUE and GREEN, JJ., Concur.
NOTES
[1] The 24-volume record in this case contains more than 4000 pages. Preparation of the record alone would have made it difficult to expedite this case.
[2] Entitlement to an award of permanent lump sum alimony as discussed herein is not to be confused with entitlement to an award of permanent periodic alimony. Awards of permanent periodic alimony continue to require the analysis set forth in Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994) (discussing presumptions in awards of permanent periodic alimony in longterm marriages, short-term marriages, and those in the "gray area"), and Kremer v. Kremer, 595 So.2d 214 (Fla. 2d DCA 1992) (overturning award of permanent alimony in "relatively short term marriage" and discussing the proper weight to be given to the factors of need and ability to pay in short-term marriages).
[3] An award of lump sum alimony can generate several complex issues, including: (1) how the award is taxed, Cox v. Cox, 462 So.2d 122 (Fla. 2d DCA 1985); (2) whether the award is dischargeable in bankruptcy, Masters v. Masters, 443 So.2d 388 (Fla. 2d DCA 1983), Doerflein v. Doerflein, 724 So.2d 153, 23 Fla. L. Weekly D2721 (Fla. 5th DCA 1998), Montgomery v. Montgomery, 169 B.R. 442 (M.D.Fla.1994); and (3) whether the award is enforceable by contempt, Owens v. Owens, 578 So.2d 444 (Fla. 1st DCA 1991), Mattera v. Mattera, 629 So.2d 1106 (Fla. 4th DCA 1994). If lump sum alimony were only used as a tool of support and not as a method to distribute assets, much of this confusion would disappear.
[4] When equitable distribution was created, the factors in section 61.08(2) were amended to require the judge to consider the distribution of assets and liabilities when determining alimony. See ch. 88-98, § 2, Laws of Fla.; § 61.08(2)(d), Fla. Stat. (1988).
[5] This example demonstrates that one can never cleanly sever asset allocation from income distribution. Often lawyers seem to believe that equitable distribution can affect alimony only when assets produce passive income or can be used to defer expenses. However, one of the reasons that the legislature wisely allows the trial judge to consider the equitable distribution of assets and liabilities when determining alimony is the impact of asset replacement and liability payments upon a spouse's income stream.
[6] See also Hurwit v. Hurwit, 537 So.2d 586 (Fla. 3d DCA 1988), cited with approval in Iribar v. Iribar, 510 So.2d 1023 (Fla. 3d DCA 1987); Gandul v. Gandul, 696 So.2d 466 (Fla. 3d DCA 1997) (approving award of bridge-the-gap alimony after rehabilitation but reversing amount); Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979) (reversing award of rehabilitative alimony and suggesting bridge-the-gap alimony instead); Corchado v. Corchado, 648 So.2d 1261 (Fla. 4th DCA 1995) (approving rehabilitative alimony awards to "bridge the gap"); McHugh v. McHugh, 702 So.2d 639 (Fla. 4th DCA 1997) (same); Green v. Green, 672 So.2d 49 (Fla. 4th DCA 1996) (same); Shea v. Shea, 572 So.2d 558 (Fla. 1st DCA 1990) (same); Whitley v. Whitley, 535 So.2d 623 (Fla. 1st DCA 1988) (commenting that meager award of rehabilitative alimony was not appropriate unless coupled with bridge-the-gap award).