793 So.2d 989 (2001)
Roberta C. BLANCHARD, Appellant,
v.
Maran L. BLANCHARD, Appellee.
No. 2D00-179.
District Court of Appeal of Florida, Second District.
February 9, 2001.
Rehearing Denied March 15, 2001.
*990 Elizabeth S. Wheeler of Berg & Wheeler, P.A., Brandon, for Appellant.
Karol K. Williams and Allison M. Perry of Karol K. Williams, P.A., Tampa, for Appellee.
ALTENBERND, Judge.
Roberta C. Blanchard, the wife, appeals a final judgment dissolving her marriage to Maran L. Blanchard, the husband. We reverse the judgment to the extent that it required the wife to pay to the husband bridge-the-gap alimony because the evidence did not support the award. In addition, we conclude that the trial court abused its discretion when it failed to award the wife $1 in permanent periodic alimony to reserve her future right to alimony in light of the husband's work history during this long-term marriage. We affirm the remaining provisions of the final judgment.
The Blanchards were married over thirty years, during which time they raised three children to adulthood. The wife worked as a teacher throughout the marriage. For most of this marriage, the husband sold recreational vehicles and earned significantly more income than his wife.
In 1997, the husband believed his sales position was in jeopardy. Rather than seek reemployment in the same industry, he decided to leave that field and develop a career in photography. This was a rather high-risk decision in light of the parties' modest standard of living and the husband's limited experience with photography.
The parties discussed this career change before the husband embarked on the venture. At trial, however, they disagreed about the wife's level of support for her husband's proposed career change. The wife admitted that she did not initially object to the plan, and that she permitted the investment of approximately $12,000 in marital funds to start the business. Although the husband perceived that the wife eagerly supported his decision, she testified that she privately hoped the husband would soon give up and return to his *991 prior sales career. In essence, she believed that she was supporting her husband through a temporary mid-life crisis.
Both parties testified that they discussed the length of time the husband would pursue his new career to determine whether it would be profitable. The wife alleged that this "trial period" was three to six months, whereas the husband asserted that the parties talked about a time frame of a year. From May 1997, until the time of trial in September 1998, the wife financially supported the couple while they continued to live in the marital home. At the time of trial, the husband had been in the photography business for sixteen months, but still was not making any significant profit from the business. He testified that while his wife paid the household expenses, he was supporting himself on only a $100 per week "draw" from the business account.
The trial court acknowledged that if the parties had divorced before 1997, the wife would have been entitled to permanent periodic alimony because of the length of the marriage, the historical incomes of the parties, and the other factors set forth in section 61.08, Florida Statutes (1999). Nevertheless, the trial court found that the wife acquiesced in the husband's decision to change careers, making this a marital decision that she could not, thereafter, unilaterally retract. As a result, the trial court granted the husband's request for "bridge-the-gap" alimony and required the wife pay him $500 per month for one year. The trial court did not grant the wife any amount of permanent periodic alimony because her current income far exceeded the husband's. In the final judgment, however, the trial court acknowledged that the husband might need to reconsider his options if his photography business did not soon become profitable.
Although we concur with much of the trial court's reasoning, we cannot affirm the trial court's decisions regarding the alimony requested by each party. Based upon the evidence presented, the trial court erred in awarding the husband bridge-the-gap alimony. In addition, the trial court abused its discretion by failing to reserve jurisdiction to potentially award the wife permanent alimony in the future.
In Borchard v. Borchard, 730 So.2d 748 (Fla. 2d DCA 1999), this court recognized that a trial court has the authority to fashion an award of permanent, lump-sum alimony, paid over a set period, to ease a party's transition from married life to single life. We cautioned, however, that "bridge-the-gap alimony is not a tool to compromise adversarial positions but to assist a spouse with any legitimate, identifiable, short-term need under circumstances where a lump sum award is reasonable and when the other spouse has the ability to pay the award.... It is a useful tool in a relatively small category of divorces." Id. at 753.
In Borchard, we envisioned a scenario in which a spouse was unable, through his or her own best efforts, to provide for the essentials of a transition from married life to single life. We emphasized that in some cases, a spouse may be unable to afford "basic living requirements" because of a divorce, particularly when there is a "meager" distribution of assets. See id. at 752-53. Here, there was no evidence that the husband lacked his basic needs. He received over $60,000 in marital assets, and these assets happened to be the more liquid of the parties' holdings. The trial court's equitable distribution scheme relieved him of all responsibility for the parties' marital debts. In truth, the husband is trying to receive rehabilitative alimony, disguised as bridge-the-gap alimony, to assist him in a risky, *992 new business venture when he already has considerable experience and skill in another field. An award of rehabilitative alimony, however, generally requires a rehabilitative plan that will result in an increase in the party's income. See Ingram v. Ingram, 750 So.2d 130 (Fla. 2d DCA 2000). We decline to extend the purpose of bridge-the-gap alimony to meet the "needs" the husband pursues in this case.
We recognize that the wife participated, even if by acquiescence, in this career change. In addition, although she asserted the husband could become immediately reemployed in the recreational vehicle sales field, she offered no competent, substantial evidence sufficient to support imputing income to the husband. As a result, the trial court was correct in finding that no income should be imputed to the husband at this time, and that an award of any significant amount of permanent alimony to the wife was not appropriate. See Gildea v. Gildea, 593 So.2d 1212 (Fla. 2d DCA 1992).
Nevertheless, the trial court acknowledged that the husband's venture was likely either to become successful or to force him into a more profitable career sometime in the next few years. Because the business was new and the parties' circumstances were evolving, there was no means by which the trial court could judge the future viability of the wife's permanent periodic alimony claim. The historic incomes of the parties, the length of the marriage, the moderate marital assets, and the wife's needs, however, required an award of a nominal amount of permanent alimony to permit the wife to pursue a future increase should the husband's full earning potential materialize. See Wing v. Wing, 429 So.2d 782 (Fla. 3d DCA 1983); Moore v. Moore, 401 So.2d 841 (Fla. 5th DCA 1981). See also Stock v. Stock, 693 So.2d 1080 (Fla. 2d DCA 1997). Under these circumstances, the trial court abused its discretion in failing to award the wife a nominal amount of permanent periodic alimony, thus reserving jurisdiction to revisit this claim as the parties' new lives develop. See Strahan v. Strahan, 605 So.2d 1316 (Fla. 4th DCA 1992). See also Fusco v. Fusco, 616 So.2d 86 (Fla. 4th DCA 1993).
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
PATTERSON, C.J., and CASANUEVA, J., concur.