944 So.2d 1043 (2006)
Bruce HAY, Appellant,
v.
Renee HAY, Appellee.
No. 4D04-4734.
District Court of Appeal of Florida, Fourth District.
August 16, 2006.
*1045 Martha S. Eskuchen, Juno Beach, for appellant.
James R. Quick and Jaime A. Quick, Jupiter, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We grant appellant's motion for rehearing, withdraw our prior opinion and substitute the following in its place.
The husband appeals a final judgment which awarded the wife one-half of all of the assets titled in either the husband's name or the parties' names jointly, "bridge the gap" alimony, and attorney's fees. The court found that the husband had commingled his considerable wealth, acquired prior to this four-year marriage, into joint accounts with his wife. For the most part, we agree with the trial court that the pre-marital assets which flowed into joint accounts lost their non-marital character. Thus, we affirm the final order with respect to equitable distribution, except to the extent that the trial court is directed to reconsider its distribution of a few assets, as discussed more fully below. We reverse the award of "bridge the gap" alimony, because given the length of the marriage and the substantial assets the wife received, the award was an abuse of discretion. We also reverse the award of attorney's fees, because the court failed to make the Rowe findings.
The husband, age 70 at the time of dissolution, married the wife, age 45, in 2000 in Minneapolis, where the husband had considerable financial success. The parties had cohabited off and on since 1992. The wife was a hairdresser and quit her job when she married the husband. Together with her two children from a prior marriage, the parties moved to Florida. The husband had three children from his first marriage, all of whom were adults. The wife filed for divorce four years after the marriage.
The main issues on appeal in this case relate to the identification of marital assets and non-marital assets and the equitable distribution of the marital assets. The husband claimed that because all of the money used to purchase joint assets came from his pre-marital assets, everything owned by him or the parties jointly were non-marital assets. The wife, on the other hand, contended that his pre-marital assets became so commingled with their joint assets that they had lost their character as non-marital assets. The trial court agreed with the wife. Except for a few assets, which we will discuss, we agree.
The husband had considerable assets prior to marriage. In opening statement, the husband's attorney stated that the husband came into the marriage with about $2,250,000 in assets. Unfortunately, a concise picture of his pre-marital assets was never revealed. We can glean from the testimony that his most significant asset was a mobile home park in Minnesota that *1046 he sold to his sons prior to retirement. He also owned a home in Minnesota, although there was some dispute whether this was also owned by the wife, as her name was on some of the title documents and they had cohabited there for several years. He owned a large motor home which he later sold to his sons. It is unclear what other assets were owned.
When the parties married, they moved to Florida. With the husband's pre-marital funds they purchased a home in Jupiter and took title in the names of both husband and wife. The home was purchased and then improved. Section 61.075(5)(a)5., Florida Statutes, provides that all real property held by tenants by the entireties is presumed to be a marital asset, and if a person claims a special equity in the property, the burden is on that party to prove the claim. The husband successfully showed that the money to purchase the property came from his non-marital funds. He also had to show that no gift was intended. See Robertson v. Robertson, 593 So.2d 491 (Fla.1991). He testified that he did not intend a gift of the property to the wife. According to the husband, he placed the wife's name on the deed merely to ensure that she could have the property if something happened to him. The husband testified that jointly titling the home would effectuate this goal without requiring him to place the property in a revocable trust which he had established for estate planning purposes. However, his testimony was countered by her testimony that he told her that, "This is our house," and that he had purchased it for the two of them and her children. She denied that she understood that she only had a claim to the property if he died. This denial makes this case distinguishable from Hill v. Hill, 675 So.2d 168 (Fla. 5th DCA 1996), upon which the husband relies. There, both the wife and the husband testified to their understanding that the wife's name was on the deed so that she would get the property in the event of the husband's death.
In this case, the court listened to the wife and the husband testify at length regarding the acquisition of the home. The trial court is the judge of the facts and the credibility of the witnesses. Santiago v. State, 889 So.2d 200, 203-04 (Fla. 4th DCA 2004) (quoting Holden v. State, 877 So.2d 800, 801-02 (Fla. 5th DCA 2004)) ("[T]he role of the trial court is to weigh the credibility of witnesses and to resolve evidentiary conflicts, and on truly discretionary matters, the appellate court must recognize the trial court's superior vantage point."). We cannot conclude that the trial court abused its discretion in determining that the husband failed to carry his burden of proving no gift was intended. Therefore, the court acted within its discretion in concluding that the home was a marital asset.[1]
About two years after the home was purchased, the parties signed a second *1047 mortgage line of credit on the home. The husband then used these monies, and others, to day trade in the stock market and to cover some household expenses. In addition to the day trading, part of these monies were used to purchase gold coins. Because the house was a marital asset, so too was the income received from the loan against the home. See § 61.075(5)(a)1., Fla. Stat. To the extent that these monies purchased other assets in the husband's name alone, these too were properly characterized by the trial court as marital assets.
During the marriage, the husband received substantial amounts of money from the refinancing of the mobile home park in Minnesota, admittedly a non-marital asset. These monies were deposited in the parties' joint account, from which they paid all of their living expenses. Most of the husband's investment money went in and out of this account, as did monies from the line of credit on the marital home. At one point, the husband transferred nearly $500,000 into the joint account from the refinancing and then transferred $300,000 out to a Scott Trade account that also received infusions of money from the line of credit on the home. Thus, even though the trading account was in the husband's name, it commingled marital funds from the line of credit as well as non-marital funds from the refinancing. The court did not err in determining that the funds were sufficiently commingled so as to lose their non-marital status. See Lakin v. Lakin, 901 So.2d 186 (Fla. 4th DCA 2005); Williams v. Williams, 686 So.2d 805 (Fla. 4th DCA 1997).
We do, however, believe that the court may have made a double award of the value of the Scott Trade account, because it also made an award of several specific stocks which, as we read the evidence, are simply the stocks in the Scott Trade account. We thus reverse and remand to reconsider the award of the stocks and the Scott Trade account and for the trial court to delete the award of the stock or the trade account to the extent that they are the same assets.
We find no abuse of discretion in the trial court's disposition as to the parties' personal property, but we agree with the husband that the wife's $3,000 IRA was a marital asset subject to equitable distribution. See § 61.075(5)(a)3., Fla. Stat.
We also agree with the husband that the trial court erred in its valuation of the parties' joint Bank of America account where the wife admitted that she withdrew approximately $2,400 from this account on the day she filed for dissolution. Because this joint account was a marital asset, we direct the trial court on remand to treat the amount withdrawn as marital monies subject to equitable distribution.
With respect to alimony, the trial court determined that the wife had not presented a sufficient plan of rehabilitation, even though the wife had testified as to the requirements to receive her hairdresser's license in Florida. In particular, she testified that she had a license in Minnesota when she owned and operated her own salon there. She would have to receive a Florida license, which would take approximately ten months to secure. Instead of awarding rehabilitative alimony to permit the wife to obtain this employment, the trial court awarded her $3,000 per month for two years, more than twice the time required to obtain her license and become self-supporting. In addition, the court ordered the husband to pay the expenses of the home until it is sold.
The husband contends that given the substantial equitable distribution of assets *1048 to the wife and the short duration of the marriage, the award of "bridge-the-gap" alimony of $3,000 per month for two years is an abuse of discretion. We agree.
Bridge-the-gap alimony is meant to ease the transition of a spouse from married to single life. See Green v. Green, 672 So.2d 49, 51 (Fla. 4th DCA 1996); see also Landow v. Landow, 824 So.2d 278, 279 n. 1 (Fla. 4th DCA 2002) (commenting that bridge-the-gap alimony may be appropriate to "cushion the blow" as the recipient spouse adjusts to single life); Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979)(bridge-the-gap award may be justified after short-term marriage to allow a spouse to bridge-the-gap between the high standard of living enjoyed during the brief marriage and the more modest standard of single life).
In a thirty-year marriage, the second district disapproved a bridge-the-gap award of $500 for one year to the husband, who had changed careers with the concurrence of the wife. Blanchard v. Blanchard, 793 So.2d 989 (Fla. 2d DCA 2001). Relying on its prior opinion in Borchard v. Borchard, 730 So.2d 748 (Fla. 2d DCA 1999), the court said:
"[B]ridge-the-gap alimony is not a tool to compromise adversarial positions but to assist a spouse with any legitimate, identifiable, short-term need under circumstances where a lump sum award is reasonable and when the other spouse has the ability to pay the award. . . . It is a useful tool in a relatively small category of divorces." Id. at 753.
In Borchard, we envisioned a scenario in which a spouse was unable, through his or her own best efforts, to provide for the essentials of a transition from married life to single life. We emphasized that in some cases, a spouse may be unable to afford "basic living requirements" because of a divorce, particularly when there is a "meager" distribution of assets. See id. at 752-53.
793 So.2d at 991. The husband in Blanchard had received $60,000 in liquid assets and was relieved of all marital debt. On those grounds, the court held that he was not entitled to bridge-the-gap alimony to transition into single life.
In circumstances similar to this case, we reduced a bridge-the-gap award to the wife from four years to six months after a seven month marriage between a 72-year-old husband and a 40-year-old wife, even though the parties had lived together for several years prior to the marriage. See Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979).
In this case, where the parties were married for only four years, and the wife received nearly $250,000 in assets, with approximately $150,000 in liquid assets, and no marital debt, the wife needs no assistance to transition from married to single life. The home has been ordered to be sold, and the husband was made responsible for its expense until sale. The wife has sufficient resources to make the transition and sustain herself until she becomes employed. We therefore reverse the award of bridge-the-gap alimony.
As to attorney's fees, the final judgment stated the following with respect to attorney's fees: "The Husband has the ability to pay all of Wife's fees and costs and that [sic] the Wife has the need for the Husband to pay said fees and costs. The sum of $25,537.26 are reasonable fees and costs expended in this case." The trial court failed to make specific findings with regard to the number of hours reasonably spent on the litigation and the reasonable hourly rate. This was error. See Fla. Patient's Comp. Fund v. Rowe, 472 So.2d 1145 (Fla.1985). We reverse for reconsideration in accordance with Rowe.
*1049 We do not find any error in the remaining issues raised.
Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
KLEIN, J., and BAILEY, JENNIFER D., Associate Judge, concur.
NOTES
[1] At the final hearing, the trial court refused to allow the testimony of the husband's adult children as to the husband's intent regarding the marital home and the trust, sustaining the wife's hearsay objections. On appeal, the husband now argues that the trial court erred by excluding the testimony because declarations of donative intent are admissible as hearsay exceptions under section 90.803(3)(a), Florida Statutes. We find that this issue was not properly preserved, as the husband did not raise this precise argument for admissibility below. Carabella v. State, 727 So.2d 270, 271 (Fla. 4th DCA 1999) ("Appellant argues that the trial court erroneously excluded certain testimony upon the state's hearsay objection. By not raising in the trial court those arguments for admissibility now raised on appeal, appellant failed to preserve his contention that the excluded statements were non-hearsay or that they fell within some exception to the hearsay rule.").