951 So.2d 55 (2007)
Robert D. PRICE, Appellant,
v.
Nicole Jena PRICE, Appellee.
Nos. 5D05-3174, 5D05-3713.
District Court of Appeal of Florida, Fifth District.
March 9, 2007.
*56 Nancy N. Nowlis and Corrine A. Bylund of Zisser, Robison, Brown, Nowlis & Maciejewski, P.A., Jacksonville, for Appellant.
Gregory E. Tucci, Ocala, for Appellee.
LAWSON, J.
Robert D. Price appeals from a final judgment dissolving his marriage to Nicole Jean Price. He challenges the award of alimony and attorneys' fees to his former wife. For the reasons explained below, we uphold the alimony award and reverse the attorneys' fees award. We also address several prior panel decisions from our court which forbid trial courts in our jurisdiction from awarding "bridge-the-gap" alimony.

Relevant Facts and Proceedings Below
Robert and Nicole Price were married in 1991 shortly after Nicole graduated from high school. At the time, Robert was on active duty in the United States Navy, and was stationed in Jacksonville, Florida. Nicole attended cosmetology school, and later received a cosmetology license. In 1991, she worked at a part-time job and earned $3,117 that year. A year later, she gave birth to a son.
Because Robert was on active duty in the Navy, which required lengthy tours of duty at sea, Nicole stayed home to care for their son for the next three years. Nicole re-entered the work force, part time, in 1995, earning an annual income of $5,509. She continued her part-time employment until 1996, when she gave birth to the couple's daughter. Nicole did not work outside of the home again until 2003, when she separated from Robert. By that time, her cosmetology license had expired. She found part-time employment in an unrelated field and earned $3,676, which she used to relocate herself and her children to Marion County, Florida. Also, using money borrowed from her parents, Nicole rented a two bedroom apartment, where she currently resides with both children.
In March of 2004, Nicole secured stable employment with the Marion County Health Department. For all but three of the eighteen months that Robert and Nicole were separated prior to trial, he sent her $600. Under the guidelines, Robert's minimum monthly child support obligation at the time of separation should have been $962.44.
*57 In September of 2004, after 13 years of marriage, Nicole filed a petition for dissolution. In the petition, she requested primary residential responsibility for the two minor children, payment of marital debts, child support, and alimony. Prior to trial, Nicole submitted an amended family law affidavit that listed gross monthly income of $1,483.78, and net monthly income of $1,271.28. She listed total monthly expenses of $1,761, leaving her with a monthly deficit of $489.72. However, the affidavit does not list the $600 she received from Robert.
Robert submitted a family law affidavit that listed gross monthly income of $3,767.76, and net monthly income of $3,377.97. He listed total monthly expenses of $3,222.67, leaving him a monthly surplus of $155.30. The affidavit did not include the $600 monthly payment to Nicole. During the trial, Robert admitted that his post-separation gross salary had increased to $4,212.88, but that his monthly expenses had remained the same.
Nicole testified that she needed $500 in alimony to: 1) go back to school; 2) pay for reasonable and necessary expenses, including expenses not listed in her affidavit; and 3) move out of her two bedroom apartment and into a three bedroom apartment so that both children could have a room of their own. Neither party presented a rehabilitation plan, and Nicole admitted that she had neither researched the cost of returning to school nor even identified any particular program of study. She testified that it would cost an additional $300-$600 per month in rent for a three bedroom apartment. Robert admitted that a two bedroom apartment was inadequate for the children, and noted that he was willing to pay more money so that the children could be moved into a larger apartment. However, he suggested that any additional payment ordered should be added to his existing child support payment. He argued that an award of alimony was not warranted because when the $600 he had been paying in child support was added to the amount listed in Nicole's financial affidavit she had a monthly surplus sufficient to meet her needs.
The trial court considered the testimony and financial information provided and entered a final judgment of dissolution. First, the court awarded primary residential responsibility for both children to Nicole. Robert did not contest this arrangement. Second, after finding that the marriage was a partnership with each party making equal contribution, the court equally divided marital assets and liabilities. This ruling is not challenged on appeal. Third, the court found that the parties' thirteen and one-half year marriage fell into the "gray area" where there is no presumption for or against an award of alimony. However, the court noted that Nicole's decision to stop working to care for the children allowed Robert to pursue his career in the Navy. After finding that Robert had an ability to pay alimony, and that Nicole demonstrated a need for alimony, the court awarded Nicole $500 per month in permanent periodic alimony. The court noted that the award was based in part on the fact that neither party submitted a rehabilitation plan, which limited the court (under our precedent) to an award of permanent periodic alimony, or none at all.
The court specifically rejected Robert's argument that Nicole's need could only be established from the entries contained in her financial affidavit, which Robert argued showed a surplus after his prior $600 monthly child support payments. The court disagreed, noting that "the amounts for necessities reflected in her financial affidavit are pathetically low" and that her request for $500 was "a very, very reasonable *58 request based on her extremely reasonable financial affidavit." For example, Nicole listed monthly expenses for clothing ($20), grooming ($5), and entertainment ($10). She testified that this was based upon the amount that Robert allowed her to spend on herself, for these items, during the marriage. By contrast, Robert listed greater monthly expenses for clothing ($50), grooming ($20), and entertainment ($50). Similarly, Nicole listed $430 for food, compared to Robert's $580 food budget. Additionally, Robert listed monthly expenses for cable/internet service ($75), and gifts ($50), which Nicole was not able to afford at all.
Next, the court found that Robert's child support payments had been less than required under the child support guidelines and ordered Robert to increase the payment to $942.42 per month. Based on the past discrepancy, the court also awarded Nicole $8,240.03 in retroactive child support. After the parties agreed to deduct the amount Nicole owed Robert for marital debts, the court found that Robert owed $3,331.03 to Nicole and ordered him to pay that amount in monthly installments of $50.
Finally, the court announced Nicole's entitlement to attorneys' fees, but reserved ruling on the amount for a subsequent hearing. At that hearing, the court considered testimony from another attorney regarding the reasonableness of the amount of attorneys' fees requested, and testimony from Nicole that the work was provided. The court subsequently entered an order that required Robert to pay all of Nicole's attorneys' fees, $5,555.50, within twelve months. This appeal followed.

Jurisdiction and Standard of Review
We have jurisdiction pursuant to article V, section 4(b)(1) of the Florida Constitution and rule 9.030(b)(1)(A) of the Florida Rules of Appellate Procedure. A trial court's award of alimony or attorneys' fees in a dissolution of marriage proceeding is reviewed under an abuse of discretion standard. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980).

Permanent Alimony Award
Permanent periodic alimony is used "to provide for the needs and necessities of life for a former spouse as they were established during the marriage of the parties." Mallard v. Mallard, 771 So.2d 1138, 1140 (Fla.2000). "The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates." Canakaris, 382 So.2d at 1201-02. The court may also consider any other factor necessary to do equity and justice between the parties. Id. at 1200; § 61.08(2), Fla. Stat. (2004).
The trial court considered all of these factors, as evidenced by the court's detailed final order. On appeal, however, Robert argues that the trial court erred when it awarded permanent periodic alimony under circumstances that will result in Nicole receiving more money than needed to live at the standard of living enjoyed during the marriage, as reflected in Nicole's financial affidavit. The primary flaw in Robert's argument is that it is based upon the inclusion of Robert's child support obligation as income to Nicole. As the trial court correctly pointed out, when "alimony is required because of the disparity in income between the parties, the court must first determine the amount of alimony and then, considering alimony as income, determine the amount of child support." Pike v. Pike, 932 So.2d 229, 229 (Fla. 4th DCA 2005).
*59 When child support is not considered, Nicole's financial affidavit reflects a monthly deficit. And, we agree with the trial court that Nicole's affidavit reflects extraordinarily modest personal expenses. In short, the alimony award will allow Nicole to live at the standard of living she enjoyed during the marriage. Given the length of the marriage, the disparity of incomes between the parties,[1] Robert's ability to pay (in light of his raise), the lack of any evidence that Nicole has an earning potential beyond that realized in her current job, and the other factors considered by the trial court, we cannot find an abuse of discretion in the court's alimony award. See Canakaris, 382 So.2d at 1203 ("Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.").

Attorneys' Fee Award
"The standard for awarding attorney's fees in dissolution cases is the financial need of the requesting party and the financial ability of the other party to pay." Derrevere v. Derrevere, 899 So.2d 1152, 1153 (Fla. 4th DCA 2005) (citations omitted); see also § 61.16, Fla. Stat. (2004). When Robert's support obligations are considered, along with his overall financial condition at the time of the final judgment, it is clear that Robert cannot afford to pay for Nicole's attorneys' fees without borrowing additional money to do so. Robert already borrowed the money necessary to pay his own attorneys' fees, and is in no better position to pay Nicole's fees than she will be in after the divorce. Under these circumstances, requiring Robert to pay Nicole's attorneys' fees constituted an abuse of discretion. Gaudette v. Gaudette, 890 So.2d 1161 (Fla. 5th DCA 2004); see also Derrevere v. Derrevere, 924 So.2d 987 (Fla. 4th DCA 2006).

Bridge-The-Gap Alimony
Although we have found no abuse of discretion in the trial court's award of permanent periodic alimony in this case, the trial court clearly expressed frustration during the proceeding with its lack of ability to consider a short-term alimony award to aid Nicole in making her transition to single life. Section 61.08, Florida Statutes, does not preclude such an award, and the other four district courts of appeal in Florida have expressly recognized bridge-the-gap alimony. See, e.g., Shea v. Shea, 572 So.2d 558, 560 (Fla. 1st DCA 1990) (recognizing that "[e]ven though a spouse is already employed, or employable, an award of rehabilitative alimony may also be justified as a `bridge-the-gap' measure, to aid the recipient in making the transition from a married to a single state"); Borchard v. Borchard, 730 So.2d 748, 753 (Fla. 2d DCA 1999) (cautioning that "bridge-the-gap alimony is not a tool to compromise adversarial positions, but to assist a spouse with any legitimate, identifiable, short-term need under circumstances where a lump sum award is reasonable and when the other spouse has the ability to pay the award"); Iribar v. Iribar, 510 So.2d 1023, 1024 (Fla. 3d DCA 1987) (approving a trial court's alimony award that "was strictly a bridge-the-gap type of award" where "the wife is presently *60 employed, has more than adequate employment skills, and needs nothing to be `rehabilitated' to, other than to ease her transition from a married to a single status"); Murray v. Murray, 374 So.2d 622, 624 (Fla. 4th DCA 1979) (approving "a short period of rehabilitative alimony sufficient to allow the wife to `bridge' the gap between the high standard of living enjoyed during the brief marriage and the more modest standard that the wife can provide for herself").
However, in Martin v. Martin, 582 So.2d 784, 786 (Fla. 5th DCA 1991), a panel of our court flatly rejected "bridge-the-gap" alimony with only a pronouncement that "[t]here is no support in law or logic for such an award. . . ." The panel expressed its concern that: "If such were permitted then one can imagine no bounds to the limits  how far does one go before the storm is weathered or the gap is bridged?" We note that this concern does not appear to have been realized in the other appellate districts throughout the state of Florida where such awards are recognized.
As for the legal authority to make a "bridge-the-gap" temporary alimony award, we see at least three compelling arguments for reading section 61.08 as providing trial judges with discretion to make such an award in appropriate cases. The first is the broader view of "rehabilitative alimony" adopted by the First, Third and Fourth district courts. These courts do not view rehabilitation narrowly to include only those circumstances in which one spouse needs education or training to secure appropriate employment, and has presented evidence of a plan to acquire the needed skills or degree. The second argument is set forth by Judge Altenbernd in his well-reasoned opinion in Borchard. In summary, Borchard explains why it is clear that lump-sum alimony can be ordered in "installments, to help one spouse adjust financially to life after marriage." 730 So.2d at 749. The third argument, though not as precise, is just as compelling. In section 61.08, Florida Statutes, the Legislature has expressly directed trial courts to consider all factors necessary to do "equity and justice between the parties." It would be contrary to this language to hold that in a short-term marriage where one spouse has the ability to pay and the other has a compelling need for short-term support to transition into single life, section 61.08 must be construed narrowly as depriving the trial court of authority to make the needed short-term award.
As a panel, we may not agree on which of these constructions is most appropriate. However, we all agree that section 61.08 is properly read as granting trial courts the discretion to award a short-term alimony award, even in instances where no plan for rehabilitation (in the narrow sense) is offered, when such an award is necessary to do equity and justice between the parties. For this reason, we believe that it is time to recede from Martin,[2] and join the other district courts of this state in recognizing "bridge-the-gap" alimony.[3]
*61 In this case, however, neither party preserved the issue for appellate review, or attempted to raise it on appeal. For this reason, the present case does not present an appropriate vehicle for en banc consideration of our prior precedent on this issue. See Shands Teaching Hosp. & Clinics, Inc. v. Smith, 480 So.2d 1366, 1368 (Fla. 1st DCA 1985) (Barfield, J., concurring) (noting that an aspect of the doctrine of judicial restraint is the self-imposed rule that a court should only decide questions "properly presented to it and necessary to the determination of the case"). In the appropriate case, we believe that a majority of our court would now agree to reconsider this issue.
AFFIRMED IN PART and REVERSED IN PART.
ORFINGER and EVANDER, JJ., concur.
NOTES
[1] Despite the fact that Nicole's current full-time job compensates her better than any job she had prior to or during her marriage, she still earns approximately one third of the income earned by Robert.
[2] We would also recede from the other panel decisions from our court that have followed or applied the same rule announced in Martin. See, e.g., Greene v. Greene, 895 So.2d 503 (Fla. 5th DCA 2005); Widmer v. Widmer, 713 So.2d 1054 (Fla. 5th DCA 1998); Fullerton v. Fullerton, 709 So.2d 162 (Fla. 5th DCA 1998); Ingle v. Ingle, 640 So.2d 223 (Fla. 5th DCA 1994).
[3] We note that a panel of this court several years ago signaled the court's willingness to reconsider Martin. See Alpha v. Alpha, 885 So.2d 1023, 1031-32 (Fla. 5th DCA 2004) (recognizing that "[a]lthough this court has not looked kindly on `bridge the gap' rehabilitative alimony awards in the past, in a proper case, it might do so in the future") (citations omitted). The trial courts within our jurisdiction have continued to express frustration at our precedent in this area, as did the court below, but have been constrained to follow Martin. Additionally, we suspect that litigants have staked out adversarial positions for strategic reasons that have precluded the issue from being presented to us squarely for review. In other words, one party opposes any award of alimony  and therefore does not suggest a short-term award  and the other party is seeking permanent periodic alimony and does not want to compromise his or her adversarial position by arguing for a short-term award to address transitional needs.