T.C. Summary Opinion 2010-157

UNITED STATES TAX COURT

ROSEMARIE T. REYNOLDS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16554-08S.          Filed October 25, 2010.

<u>Elan R. Kaney</u>, for petitioner.

<u>James R. Bamberg</u>, for respondent.


KROUPA, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

_____

[1]All section references are to the Internal Revenue Code,
and all Rule references are to the Tax Court Rules of Practice
and Procedure, unless otherwise indicated.

and this opinion shall not be treated as precedent for any other case.

Respondent determined an $8,250 deficiency in petitioner's Federal income tax for 2005. The sole issue for decision is whether the $30,000 petitioner received from her ex-husband is alimony and therefore includable in gross income.[2] We hold the payments are not alimony and therefore not includable in gross income.

## Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Holly Hill, Florida at the time she filed the petition.

Petitioner and her ex-husband divorced after an 11-year marriage and signed a marital settlement agreement (the marital settlement) in August 1998. Petitioner was college educated, and her ex-husband was an educated businessman who earned $350,000 annually from several business interests he owned. They intended the marital settlement to fully settle their rights and obligations relative to one another and with respect to their

---

[2]Petitioner's marital settlement agreement labels the payments as rehabilitative alimony. Accordingly, we will refer to them as such.

son, WAC, who was ten at the time.[3]  The marital settlement required petitioner's ex-husband to make payments for distribution of their marital assets, monthly child support and rehabilitative alimony.  Petitioner's ex-husband was to make fixed payments at specified times in equitable distribution of the marital assets, which were listed in the relevant section of the agreement.  He also was obligated to pay monthly child support.  Child support would terminate in specified circumstances, including upon the noncustodial parent's death.

Petitioner's ex-husband agreed to make specified monthly payments of rehabilitative alimony to petitioner for eight years and one month pursuant to the terms of the marital settlement.  He agreed to pay $2,250 per month during 2005.  He also agreed to maintain a life insurance policy, designating petitioner as beneficiary, with a death benefit sufficient to cover the total amount of rehabilitative alimony due to petitioner.[4]  The marital settlement did not require specific use of the funds but did note petitioner's enrollment in a PhD program in 1998, the time of execution.  The parties included language specifying that the payments of rehabilitative alimony could not be modified or

---

[3]The Court uses the initials of minor children.  See Rule 27(a)(3).

[4]The marital settlement quantifies the total rehabilitative alimony payments as $306,000, failing to account for an additional $2,250 mandated payment.

terminated, regardless of whether circumstances changed. The marital settlement also bound petitioner's and her ex-husband's successors, heirs and assigns. A Florida circuit court granted a final judgment of dissolution of marriage that incorporated by reference the marital settlement and increased the amount of rehabilitative alimony due in 2005 to $2,500 per month, totaling $30,000 for the year.

Petitioner received the $30,000 from her ex-husband in 2005 as prescribed in the marital settlement. Petitioner and her ex-husband were not members of the same household during 2005. Petitioner did not report any alimony income on her Federal income tax return for 2005. Her ex-husband, however, claimed alimony deductions for the $30,000 he paid to petitioner in 2005.

Respondent issued the deficiency notice to petitioner determining that petitioner failed to report the alimony she received in 2005. Respondent already resolved this issue in petitioner's favor for the 2002 taxable year but raised it again for 2005. Petitioner timely filed a petition.

## Discussion

We must decide whether the $30,000 petitioner received in 2005 is alimony and therefore includable in her gross income. Petitioner claims it is a property settlement or a lump-sum payment, not alimony, and therefore not taxable to her. Respondent argues that the $30,000 is includable as alimony.

We begin with the burden of proof. Where, as here, the key facts are fully stipulated and we are faced with a question of law, our holding does not depend on the burden of proof we impose or the standard of review we apply. Instead, we must reject erroneous views of the law. See Kendricks v. Commissioner, 124 T.C. 69, 75 (2005) (and the cases cited thereat); McCorkle v. Commissioner, 124 T.C. 56, 63 (2005).

We now review the Federal income tax law regarding alimony.[5] Property settlements incident to a divorce generally are not taxable and do not give rise to income. Sec. 1041; Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000). Conversely, alimony payments generally are taxable to the recipient and deductible by the payor in the year paid. Secs. 61(a)(8), 71(a), 215(a). The label assigned to a payment by the parties or the divorce court is not dispositive for Federal income tax purposes. See, e.g., Beard v. Commissioner, 77 T.C. 1275, 1283-1284 (1981); Sroufe v. Commissioner, T.C. Memo. 1995-256. Instead, alimony is defined as a cash payment received by or on behalf of a spouse meeting specified requirements. Sec. 71(b)(1). The parties agree that

---

[5]Property interests of divorcing parties are determined by State law, yet Federal law governs the Federal income tax treatment of that property. Green v. Commissioner, 855 F.2d 289, 292 (6th Cir. 1988), revg. on other grounds T.C. Memo. 1986-269.

petitioner satisfies all of the conditions except the requirement that the payor not be obligated to make any payments for any period after the death of the payee spouse. Sec. 71(b)(1)(D).

The language of the marital settlement does not specifically provide that petitioner's ex-husband would be obligated to make payments after petitioner died. The Court must look to State law, in the absence of specific agreement language, to determine whether petitioner's estate would have a right to payments of rehabilitative alimony. See Kean v. Commissioner, T.C. Memo. 2003-163, affd. 407 F.3d 186 (3d Cir. 2005); Notice 87-9, 1987-1 C.B. 421, 422. We therefore look to Florida law to determine whether it would terminate the rehabilitative alimony payments at petitioner's death.

Florida family law provides that the characterization of alimony and other payments is determined by their function, not their title. Boyd v. Boyd, 478 So. 2d 356, 357 (Fla. Dist. Ct. App. 1985) (citing Underwood v. Underwood, 64 So. 2d 281 (Fla. 1953)); Karch v. Karch, 445 So. 2d 1077, 1078 (Fla. Dist. Ct. App. 1984); Zuccarello v. Zuccarello, 429 So. 2d 68, 69 (Fla. Dist. Ct. App. 1983). Alimony may be either periodic or lump sum. Fla. Stat. Ann. sec. 61.08(1) (West 2006); Canakaris v. Canakaris, 382 So. 2d 1197, 1200 (Fla. 1980); Borchard v. Borchard, 730 So. 2d 748, 751 (Fla. Dist. Ct. App. 1999). Lump-sum alimony is a fixed, non-modifiable monetary obligation that

is immediately vested and therefore does not terminate upon the death of the payor or the payee. Boyd v. Boyd, supra at 357; see also Canakaris v. Canakaris, supra at 1201; Borchard v. Borchard, supra at 751. Lump-sum alimony, despite its name, may be paid in installments. See Borchard v. Borchard, supra at 751.

Respondent argues that the $30,000 paid in 2005 was rehabilitative in nature, as it was intended to pay for petitioner's PhD program and other rehabilitation. Respondent concludes, therefore, that this amount would not have been payable to petitioner's estate had she died during 2005 because the rehabilitative purpose of the funds would have lapsed. We disagree.

Florida law provides that the rehabilitative intent of the funds is not dispositive. Id. Similarly, lump-sum alimony may be rehabilitative in nature under Florida law. Id.

The marital settlement obligations due to petitioner as rehabilitative alimony were fixed and certain in the number of payments and the amount of each payment. They were not subject to modification and termination by their terms. This certainty was further clarified with language specifying that rehabilitative alimony could not be modified or terminated regardless of whether circumstances changed. These payments met the requirements for lump-sum alimony in Florida and therefore would remain payable to petitioner's estate if she were to die.

See <u>Human v. Commissioner</u>, T.C. Memo. 1998-106; <u>Stokes v. Commissioner</u>, T.C. Memo. 1994-456.

We find further support for our holding by looking to language in the marital settlement.[6]  Nothing in the marital settlement indicated that the rehabilitative alimony payments would terminate on petitioner's death.  Indeed, the marital settlement language emphasized that the obligation could not be modified or terminated under any circumstances.  This language is in stark contrast to the language requiring child support payments and specifying that the child support obligation would end upon the death of the noncustodial parent.  The ex-husband's obligation to pay rehabilitative alimony was not contingent on any factor or event, such as petitioner's attending school.  Indeed, petitioner is the irrevocable beneficiary of her ex-husband's life insurance policy, required by the marital settlement to ensure payment of the total sum of the rehabilitative alimony.  Petitioner and her ex-husband also bound

_____

[6]When State family law is ambiguous regarding termination of payments upon payee's death, a Federal court will base its decision on the divorce instrument's language, rather than engage in complex State law inquiries.  <u>Hoover v. Commissioner</u>, 102 F.3d 842, 846 (6th Cir. 1996), affg. T.C. Memo. 1995-183; see also <u>Webb v. Commissioner</u>, T.C. Memo. 1990-540.  But see <u>Cunningham v. Commissioner</u>, T.C. Memo. 1994-474 (considering State contract law and extrinsic evidence to determine the parties' intent where State family law did not terminate husband's liability to make payments after wife's death); <u>Berry v. Commissioner</u>, T.C. Memo. 2005-91 (considering extrinsic evidence of parties' intent regarding post-death liability to the extent permitted under State law principles).

their successors, heirs and assigns to the terms of the marital settlement.  We have no reason to conclude that rehabilitative alimony payments, as described in the marital settlement, would terminate upon petitioner's death.  See <u>Hoover v. Commissioner</u>, 102 F.3d 842, 848 (6th Cir. 1996), affg. T.C. Memo. 1995-183; <u>Webb v. Commissioner</u>, T.C. Memo. 1990-540.  Accordingly, we hold that the rehabilitative alimony payments are not alimony for Federal income tax purposes and therefore not includable in gross income.

We note that respondent is not bound by his previous resolution of this issue in petitioner's favor for the 2002 taxable year.  See <u>Auto. Club of Mich. v. Commissioner</u>, 353 U.S. 180, 183-184 (1957); <u>Demirjian v. Commissioner</u>, 457 F.2d 1, 6-7 (3d Cir. 1972), affg. 54 T.C. 1691 (1970).

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.