684 So.2d 286 (1996)
John David HOLLINGER, Appellant,
v.
Joan B. HOLLINGER, Appellee.
No. 95-2779.
District Court of Appeal of Florida, Third District.
December 11, 1996.
*287 Gary N. Holthus, Miami, for appellant.
Gautier & Kavulich and Jerome J. Kavulich, Miami, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
PER CURIAM.
John David Hollinger ("former husband") appeals from an amended final order of the trial court which dissolved the parties' marriage, distributed the assets and established rehabilitative and permanent periodic alimony for Joan B. Hollinger ("former wife"). We affirm.
The parties were married in 1983. At the time of the marriage, the former wife worked for Pan American World Airways. The former husband was a machinist for Coulter Corporation. During the mid-1980s he formed a wholly owned corporation AGF Engineering, Inc. to manufacture flow cells for Coulter's blood testing equipment. Coulter's need for these flow cells meant that the former husband often worked as many, or more, hours for AGF Engineering as he did for Coulter, since he was the only employee, and he earned a substantial second salary. The parties were able to accumulate substantial assets during the course of the marriage.
The former wife left Pan American as the company was failing. The former husband bought her a dog grooming business and, later, a Featherlite horse/utility trailer sales dealership. The former wife had an avid interest in horses and competed in shows. She had no formal education beyond high school, although by the time of trial she had completed approximately one semester of college.
The former wife filed for dissolution in June, 1994. There were no children born of the marriage. The trial on this dissolution comprised five days. The trial court entered a 25 page final judgment of dissolution of marriage which made detailed findings of fact and conclusions of law on all of the issues raised by both parties. The final judgment was later amended to correct scrivener's and mathematical errors.
The former husband raised several alleged errors on appeal: the equitable distribution of the marital assets made by the trial court, particularly the award of the stock of AGF Engineering, and his tax liability thereon; the refusal of the trial court to consider evidence of the impending loss of his second job in calculating the amounts of the rehabilitative and permanent periodic alimony awards and the failure to impute income to the former wife; and erroneous findings of fact and mathematical computations in the amended final judgment.
The former husband argues that he should have been awarded 100% of the stock of his wholly owned corporation, AGF Engineering, Inc., with the balance of all of the other marital assets and liabilities then being *288 equally distributed.[1] With regard to the equitable distribution of this asset, as well as all of the other marital assets, we have reviewed the record on appeal, including the trial transcript, and find no error. As stated in Hamlet v. Hamlet, 583 So.2d 654, 657 (Fla.1991): "... [W]e again emphasize that an appellate court, in reviewing a dissolution judgment, must examine the judgment as a whole in determining whether the trial court abused its discretion." Accord, Ugarte v. Ugarte, 608 So.2d 838, 839 (Fla. 3d DCA 1992) (the type of piecemeal review requested [by the former husband] is prohibited), rev. dismissed, 617 So.2d 322 (Fla.1993). Further, this court has said:
So long as there is sufficient evidence in the record to support the trial court's findings, we are required to affirm the final judgment appealed fromeven though there may be contrary evidence and reasonable inferences therefrom to support different findings which are more to the appellant's liking. Beyond that, in a marriage dissolution proceeding in particular, the trial court possesses broad, but not unlimited, discretionary power to do equity between the parties and has various remedies to accomplish this purpose. So long as reasonable people may differ as to the propriety of the trial court's discretionary rulings, the appellate court may not disturb such rulings. Canakaris v. Canakaris, 382 So.2d 1197, 1202-03, (Fla.1980); Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976); Zalis v. Zalis, 498 So.2d 505 (Fla. 3d DCA 1986).
Adkins v. Adkins, 650 So.2d 61, 62-63 (Fla. 3d DCA 1994).
The former husband also alleges that the trial court committed prejudicial error in failing to take into account the capital gains tax consequences of awarding all of the AGF Engineering stock to him. However, the former husband failed to offer any evidence to the trial court as to the tax consequences about which he now complains. A party who wants a trial court to consider the consequences of his receiving a tax burdened asset must present evidence of the tax consequences as to all assets so that the trial court may order a distribution that is equitable. Vaccaro v. Vaccaro, 677 So.2d 918, 922 (Fla. 5th DCA 1996).
As already noted, throughout most of the marriage, the former husband held a second job, that of manufacturing four different types of flow cells for Coulter Corporation (his regular employer), through AGF Engineering. The former husband presented testimony at trial from Ms. Nancy Middleton, materials manager for Coulter, that the company was in the process of bringing the production of that equipment in-house and would not be using AGF Engineering as an outside contractor in the future. She testified that the target date for having all production done in-house was July, 1995.[2] The former husband argues that it was error, in light of this testimony, for the trial court to use the income generated from AGF Engineering to compute the amount of alimony awarded to the former wife.
The trial court correctly noted that it had to decide the case on the basis of the evidence before it at that time and not what would or might happen in the future. In Winn v. Winn, 669 So.2d 1155 (Fla. 5th DCA 1996), the trial court awarded the former wife permanent periodic alimony in the amount of $350.00 per month, apparently based on the fact that she would be receiving $942.00 per month in retirement benefits at some point in the future from the former husband's military pension. In reversing the alimony award the court stated: "Alimony awards should be based on current existing circumstances and not on possibilities likely but not yet realized." Id. at 1157. In the instant case, if future events so warrant, modification may be an available remedy.
The former husband alleged that the trial court erred in refusing to impute income to the former wife as a portion of the rehabilitative alimony award. Again, the trial court entered an extensive order in this case which *289 contained findings of facts and conclusions of law, including rulings on each of the issues raised by the former husband.[3] There is substantial evidence in the record to support the trial court's awards for alimony and we will not disturb those rulings on appeal. Adkins, 650 So.2d 61.
Finally, the former husband alleges that the amended final order contains several scrivener's and mathematical errors. Some of the alleged errors, such as the fact that the former husband received his bachelor's degree in engineering in 1981, instead of during the course of the marriage as stated in the amended final order, have no relevance at all to the outcome of the case. Other alleged errors do not change the outcome. As an example, the former husband asserts that the trial court erred in valuing his Capital Bank savings account at $18,753.29 when the account contained only $1,486.72 on the date the petition for dissolution of marriage was filed. The account in question had the $18,753.29 cash amount as of December 31, 1994[4] because, for one reason, the former husband sold marital assets consisting of Coral Gables Savings & Loan Association stock and some United States savings bonds, post-filing of the petition, and put the money into the Capital Bank account.[5] The trial court stated that such maneuvering of money and assets after the date of filing the petition for dissolution would not affect the equitable distribution. Obviously, whether the asset was in cash or stocks, it was already valued for purposes of equitable distribution. Similarly, the former husband's complaint that the trial court failed to give him credit for improvements made to the marital home located in the Redlands area is equally misplaced. The parties stipulated that the home cost $195,000 and was worth $250,000 at the time of the filing of the petition because of the improvements made. The former husband received this home outright as a portion of the equitable distribution and the trial court valued it at $250,000. Thus, the trial court correctly credited the money paid in improvements by the former husband to him.
For the above stated reasons, we affirm the dissolution of marriage and also affirm the amended final order of the trial court which equitably distributed the assets of the parties and awarded rehabilitative and permanent periodic alimony to the former wife.
Affirmed.
NOTES
[1] The trial court treated the stock as a marital asset for purposes of equitable distribution.
[2] Coulter, in fact, notified the former husband on July 7, 1995 that it would have no more open orders with AGF Engineering after July 13, 1995.
[3] As an example, the former husband argued that if the former wife were awarded the trailer sales business, a $1,500 net salary per month could be imputed to her since this was the amount she was earning at the time of trial. The trial court noted however, that "[s]ince its inception, the Wife has been paid $900 gross monthly by AGF for her work for the Featherlite dealership business. During the pendency of this litigation, the Husband unilaterally increased that salary, which the court believes was for litigation strategy purposes in light of the Wife's demand for alimony." Clearly, the trial court took great care to fashion an overall equitable distribution and alimony award that reflected close analysis of the facts and equities presented by the case.
[4] For whatever reason, this was the statement available to the court at the time of the final hearing.
[5] He made substantial withdrawals, both pre and post-filing from this account.