22 So.3d 640 (2009)
Terje GULBRANDSEN, Appellant,
v.
Lorraine GULBRANDSEN, Appellee.
No. 3D07-3043.
District Court of Appeal of Florida, Third District.
October 14, 2009.
*641 DeVane & Dorl, and William N. DeVane, Jr., Marathon; Greene Smith, and Cynthia L. Greene, Miami, for appellant.
Joel Lee Sherman, Tampa, for appellee.
Before SHEPHERD and SALTER, JJ., and SCHWARTZ, Senior Judge.
SALTER, J.
The former husband in a dissolution of marriage action, Terje Gulbrandsen, appeals an amended final judgment of dissolution of marriage. The former husband raises seven alleged errors by the trial court, although four of these relate to the valuation of specific assets. We reverse on issues relating to an equitable distribution of rights in a patent application and related corporation, and as to both alimony awards; we affirm as to all other points.

Background
At the time the former wife filed the petition below, the parties had been married 23 years. She was 56 years old, and the former husband was 55 years old. The parties' two children had attained the age of majority before the filing date.
Although the former wife had worked as a professional in the financial industry before marrying, and early in the marriage, she devoted most of the years of the marriage to the care of the parties' children and home. Her doctor testified at trial that she presently suffers from activity-limiting back and neck conditions.
The former husband worked as an engineer and inventor and has enjoyed good health. He had successfully started and sold a company in his area of specialty, industrial controls. The parties prospered, owning a home in Maryland that sold for $1,800,000 (yielding net proceeds of $1,400,000), a condominium in Marathon, Florida, found by the trial court to be worth $675,000, a retirement account of $1,187,000, and other assets.
During the later years of the marriage, the former husband had devoted his efforts to an invention known as the "Singulator," a component intended to improve the manner in which paper inserts are collated with newspapers and other periodicals. Working on a fifty-fifty basis with a partner who had worked for a major metropolitan newspaper, the former husband and his partner filed a provisional patent application for the Singulator in 2004.[1] The former husband and his business partner also formed a limited liability company, "RT Solutions," to handle the contractual and accounting matters relating to their efforts. RT Solutions was capitalized with "sweat equity," and it entered into agreements with a Dutch company whereby RT Solutions was to be paid $17,000 per month for two years for the joint development of the Singulator. After ten months, however, the former husband's partner stopped invoicing the Dutch company for the monthly payments.
Although the former husband characterized his work on the Singulator as a "hobby," he and his co-applicant spent tens of thousands of dollars on their patent applications for the Singulator, and they travelled extensively to Amsterdam, Chicago, Atlanta, and other locations in connection with the device and its prospective use by newspapers.

The Amended Final Judgment
The trial court entered its judgment of dissolution in substantially the same form *642 as the proposed judgment submitted by the former wife.[2] The equitable distribution provisions were largely unremarkable. Each party retained her or his remaining proceeds from the sale of the Maryland home,[3] the Marathon condominium was valued at $675,000 (each party's share, $337,500), the retirement account was divided equally ($587,000 per party), the parties retained their Jaguar and Infiniti automobiles, and certain accounts receivable of RT Solutions were split as well.
With regard to the Singulator patent application and RT Solutions, the trial court found that these assets were approximately 50% developed at the time of the dissolution, such that the former husband's share of each was 25% and the former wife's equitable distribution should be 12.5% of each. The language of the amended final judgment regarding these assets (and various future contingencies) was sweeping:
The Wife's entitlement to a 12.5% interest includes a 12.5% interest in any and all prospective future revenue streams that may be derived from the prospective patent, patent application, or amended patent application, future income streams associated with the Singulator or any of its component application(s), and future income streams associated with the Singulator process, its component applications, or transferrable integrations. Further, the Wife is entitled to a 12.5% interest in RT Solutions, LLC, and any successor entities, successor corporations, successor business entities, successor LLC's, patents, successor patents, and amended patents.
Am. Final J. of Dissolution of Marriage, ¶ 22, p. 16.
The trial court also found that a $40,000 payment by the former wife's mother paid $10,000 to custodial accounts for each child and $20,000 to them, but also deposited by the parties into the children's custodial accountswas made with a condition. That condition, which the court found had been accepted by the parties, was that the former wife's mother be paid 6% interest on the payment, or $2,400 per year. Accordingly, the trial court specified that the parties would be required to continue to pay one-half of that obligation, at $300 per calendar quarter each.
The amended final judgment also awarded the former wife periodic permanent alimony and lump sum alimony. The periodic permanent alimony was computed as the present value of the former wife's monthly cash flow shortfall ($2,250) from the date of the petition through the former husband's estimated retirement date. This value, $237,000, was directed by the court to be paid by the former husband within ten days of entry of the final judgment from his remaining proceeds of sale of the Maryland residence.
The trial court then awarded the former wife the former husband's one-half share of the Marathon condominium (each half valued at $337,500) as lump sum alimony in addition to the lump sum cash award of permanent period alimony. Without addressing the nearly-offsetting distribution of smaller assets (a boat, a Rolex watch, the automobiles, and the accounts receivable), *643 the bottom line on the three major assets (Maryland home proceeds, retirement account, and Marathon condominium, totaling $2,991,000) as adjusted by these alimony awards, was an allocation of $2,081,000 to the former wife (70%) and $910,000 to the former husband (30%).[4]

Analysis
We find no error in the values assigned by the trial court to the boat or the Rolex watch. These values were based on cost and the sparse testimony by the parties. The appellant, former husband, did not present expert valuation testimony that might have been more probative, and chances are that this might have cost more than any indicated reduction in fair market value.
Nor do we find merit in the former husband's arguments that the former wife should not have been awarded one-half of an RT Solutions receivable and one-half of an amount distributed by RT to the former husband's business partner. The receivable award was subject to a "pay on pay" provision; "the Wife shall receive her share of the receivable, up to the total of $29,750, at the same time as the Husband and [the former husband's business partner] receive any amount of the receivable." This provision made this distribution to the former wife subject to the inherent collection risk in any receivable. The former wife's half of an amount that had been paid by RT to the former husband's partner ($44,000), but not to the former husband, reflects a finding based on competent substantial evidenceother amounts were distributed equally between the two partners, and it was reasonable to conclude that the former husband deferred receipt of the income for attempted tactical advantage in the dissolution proceeding.[5]
Similarly, the record supports the trial court's analysis and conclusions regarding the $40,000 paid to the parties by the former wife's mother during the marriage. It was undisputed that the proceeds were invested for the benefit of the children of the marriage (providing an equal benefit to both parties to the marriage) and that the parties agreed to pay 6% interest to the former wife's mother upon her request. The interest, $2,400 per year, was then apportioned equitably for payment in equal shares by each party.
More detailed assessment is warranted for the three remaining issues raised by the former husband: the broadly-crafted interests in the Singulator patent application and in RT Solutions awarded to the former wife; the permanent periodic alimony; and the lump sum alimony (the former husband's half interest in the Marathon condominium). The first of these equitable distribution of an interest in a pending patent application and thus in any later royalties or other proceeds of the patent (if issued)is apparently a question of first impression in Florida.

The Patent Application and RT Solutions
There is ample record and legal support for the trial judge's conclusion that the former husband's personal 50% interests in the patent application and in RT Solutions were marital assets that were subject to equitable distribution. The former husband invested huge *644 amounts of his own professional time and marital funds in the design, marketing, and patent applications relating to the Singulator. His testimony that his work on the project was a "hobby" is flatly contradicted by the record and the extent of international interest in the device.
Florida law is clear that a trial court may award one spouse one-half of the other spouse's ownership interest in a closely held corporation. Although such awards are not favored and may well produce friction or additional litigation between the former spouses, one of whom essentially becomes a shareholder in the other spouse's post-judgment business activity,[6] this is an equitable remedy and the former wife obviously believes that it will produce future income for her.
While the former wife is correct that there exists "a wide range of options to value patent applications," that is not the path she chose at trial. Eschewing consideration of (1) the value of the professional time and expenses invested in the Singulator or (2) a professional appraisal of the invention as it then existed (reducing any ultimate value by the costs of further development and the uncertainties of actual issuance of a patent), the former wife chose door three, an appropriate in-kind share (fixed by the trial court at one-eighth, rather than half of the former spouse's half, interest) of the rights themselves and any net royalties or proceeds. This choice is important because it affects the legal analysis applicable to the alimony awards, infra.
Courts outside Florida have reached the same logical conclusiona patent is personal property that may be the subject of equitable distribution when the inventor and his or her spouse dissolve their marriage. See Monslow v. Monslow, 259 Kan. 412, 912 P.2d 735 (1996), and the related annotation, Frank J. Wozniak, Annotation, Copyright, Patent, or Other Intellectual Property As Marital Property For Purposes of Alimony, Support, or Divorce Settlement, 80 A.L.R.5th 487 (2000).[7] We see no reason to apply a different analysis to a patent application that was deemed sufficiently well developed to submit to the federal patent authorities on a non-provisional basis.
The former husband is correct, however, that the 12.5% distributions in the patent application and the interests in RT Solutions are phrased too broadly. The percentage interest is inequitable to the extent it purports to apply to other patents (i.e., other than the Singulator and its components or "transferrable integrations" under development before the entry of judgment) obtained solely because of post-judgment work by the former husband or others. Similarly, the "successor entities" provisions overreach. While it is true that the former wife's percentage interest in RT Solutions should not be diluted because of non-arms'-length conveyances or business combinations, it is also possible that the assets of RT Solutions may be sold to a new entity on terms that reduce the parties' percentage interest in the acquiring entity. The former husband *645 is correct that the language of paragraph 22, page 16, of the amended final judgment must be narrowed so that it applies to a 12.5% interest in the Singulator patent application and in RT Solutions, with the proviso that any subsequent transfers of the application, the patent (if and when issued), or RT Solutions must be at arms'-length and must provide proportionate interests or value as between the former husband and the former wife.

Permanent Periodic Alimony
Though acknowledging the substantial discretion of the trial court in these matters, Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), in this case the former wife's present need for permanent periodic alimony was not established. The court correctly concluded that there is a disparity in income-producing capacity and that several of the statutory elements in section 61.08, Florida Statutes (2007), were satisfied. In view of the substantial marital assets and minimal liabilities distributed to each of the parties, however, the cash award of $237,000 for permanent periodic alimony was unwarranted.
The former husband's income-producing capacity is embodied, and according to the record will continue to be expended, toward the mutually-beneficial objective of generating royalty or other income from the Singulator and through RT Solutions. Those assets, apportioned to reflect the equities as of the date of the petition, have already been distributed to the former wife as a 12.5% interest. Her election to take a percentage interest in these assets versus a valuation and buyout, see Monslow, 912 P.2d at 742-43, makes the further award of substantial permanent periodic alimony duplicative and inequitable. On remand, the trial court should award nominal periodic alimony, $1.00 per year, so that the award may be modified if both parties' hopes for the Singulator's royalties prove completely unfounded and the wife's needs are materially altered by other circumstances.[8] This prospect should also further incent the former husband to finalize his pre-judgment work on the Singulator, the related processes, and RT Solutions (rather than to abandon them for post-judgment opportunities that are not subject to the former wife's 12.5% interests).

Lump Sum Alimony
Similarly, the trial court's award of the former husband's one-half interest in the Marathon condominium must be reversed. This is not a case in which such an award is made to allow minor children to continue to reside with a custodial *646 spouse.[9] Nor is it similar to George v. George, 583 So.2d 1043 (Fla. 3d DCA 1989), in which the former wife in a marriage of 38 years was awarded the former husband's interest in the marital home as lump sum alimony in addition to an award of permanent periodic alimony. In that case, the former husband was "a practicing attorney earning a considerable amount of money each year," and those future earnings were his alone. Id. at 1044. In contrast, this case features an inventor whose royalties or other passive income have been equitably distributed to the former wife because of the unique nature of the intellectual property he created during the marriage.
In this case, then, the further award of one-half of the condominium as lump sum alimony is grossly inequitable in view of the very substantial equitable distributions to the former wife. On remand, the final judgment must be amended to award each party one-half of the Marathon condominium and to allow the former wife a reasonable period within which to buy out the former husband's interest. Failing a buy out, the property should be sold and the proceeds divided.[10]

Conclusion
Though reluctant to encroach upon the broad discretion of the trial court in dissolution cases (all appellees' mantra in dissolution appeals, based on Canakaris), that discretion does have identifiable boundaries. In this case, the judgment below crosses those boundaries on three of the awards, and must therefore be reversed in part.
We affirm the amended final judgment of dissolution in all respects save these:
1. With regard to the patent application and RT Solutions, we reverse and remand for a modification of the overbroad provisions of the judgment, as detailed in this opinion.
2. The award of permanent periodic alimony is reversed and remanded to the trial court for the entry of a nominal award of periodic alimony.
3. The award of lump sum alimony (the former husband's interest in the Marathon condominium) is reversed and remanded with directions to allow a reasonable time for an agreed buyout by either party of the other's interest and, failing that, to provide for the sale of the property and equal distribution of the net proceeds of sale.
Affirmed in part, reversed in part, and remanded with directions.
SCHWARTZ, Senior Judge, concurs.
SHEPHERD, J., concurring in part and dissenting in part.
I concur in the well-reasoned opinion of the majority in all respects but one. In its Final Judgment, the trial court found a *647 present need for alimony. I concur in the majority opinion that the lower court abused its discretion in making such an award on the facts of this case. I differ with the majority's sua sponte decision to award nominal alimony to the former wife for two reasons: (1) it is not at all certain the evidence is sufficient to justify such an award; and, (2) regardless, it is our responsibility to allow the trial court to make such a determination in the first instance.
Although the award reversed (permanent periodic alimony) and the award made (nominal alimony) appear at first blush as two sides of the same coin, they are completely different. A permanent alimony award, when granted, is based on present circumstances. See Hollinger v. Hollinger, 684 So.2d 286, 288 (Fla. 3d DCA 1996) (stating a decision to award permanent alimony must be made "on the basis of the evidence before [the court] at the time and not what would or might happen in the future"). An award of nominal alimony looks to the future, and is awardable only if there is a likely future change in circumstances. Esteva v. Rodriguez, 913 So.2d 684, 686 (Fla. 3d DCA 2005) ("[T]he rule, generally, is that where there is a likelihood of a change in the future that would warrant an award of alimony, the court should retain jurisdiction.") (emphasis added) (quoting Roy v. Roy, 522 So.2d 75, 76 (Fla. 4th DCA 1988)). For good and sufficient reason, including the fact the trial judge is on site and has the ability to observe and evaluate the demeanor of the witnesses, the discretion to make either type of award is reposed in the sound discretion of the trial judge. See Lightcap v. Lightcap, 14 So.3d 259, 260 (Fla. 3d DCA 2009); Schlagel v. Schlagel, 973 So.2d 672, 676 (Fla. 2d DCA 2008). I am not aware of any case which holds that an appellate court possesses any such authority on the facts of this case.[11]
This case constitutes a good case study for not making such a decision at this level. Adjusting for the results of our opinion today, the former wife and former husband each will exit this marriage with more than $1.1 million dollars in readily accessible cash, a half interest each in a $675,000 unencumbered Florida Keys townhouse, negligible debt, and a potential future hit from the Singulator. The only potential "likely" change of circumstance in the future that might justify an award of alimony is the wife's health. The former wife complains of severe neck and back pain resulting from two falls on a ski slope, one in 1980 and another in 1995. Yet, the only provable times during all these years she sought medical attention for this condition were in March 2006the same month she filed her petition for dissolutionwhen, as she candidly admits, she consulted a neurosurgeon, Dr. Albert Dudley, solely "because of all the things that were happening and I just wanted to know where I stood *648 physically with what I'm facing," and on a second occasion just days before trial.[12] These visits produced a diagnosis of "some degenerative disk disease," and, on the second visit, a herniation of a disk which had not yet manifested itself. The former wife takes Tylenol as needed for her condition. No further treatment or future surgery is indicated.
There is no need for a reservation of jurisdiction or nominal alimony award in this case. As this court has stated, to retain jurisdiction, "there must presently appear in the record foreseeable circumstances to take place in the future as would at that time support an award of alimony." Esteva, 913 So.2d at 686 (emphasis added). There is no such presently appearing evidence in this case.
NOTES
[1] A "non-provisional" patent application was submitted by the former husband and his partner in 2005, and this was rejected by the Patent Office in early 2007; the former husband and his co-applicant for the patent were continuing to work on amendments to address the Patent Office response.
[2] As the judgment itself notes, however, the trial court deleted a proposed provision retaining jurisdiction for an award of attorney's fees and costs (specifying instead that each party would bear its own fees and costs), and made additional, if cosmetic, edits.
[3] Although each party had received $700,000 as one-half of the proceeds, their proceeds had been reduced by living and litigation expenses by the time of trial. At that point, the former husband retained approximately $560,000, and the former wife, $582,000.
[4] As noted, approximately $22,000 of the former wife's share is attributable to the greater sum of remaining proceeds in her half of the Maryland home sale proceeds ($582,000 of $700,000, versus the former husband's remaining balance of $560,000).
[5] The trial court found, and the evidence showed, that the RT bank account contained sufficient funds at the pertinent date to permit an equivalent $44,000 distribution to the former husband.
[6] Awards providing for joint operations or property rights by former spouses are disfavored, for obvious reasons. Robbins v. Robbins, 549 So.2d 1033 (Fla. 3d DCA 1989). In this case, the former wife is placed in a position more analogous to a limited partner or minority shareholder.
[7] In other cases, however, a court has determined that a particular patent is simply too speculative to consider. Yannas v. Frondistou-Yannas, 395 Mass. 704, 481 N.E.2d 1153 (1985). In this case, the trial court concluded that sufficient interest in the Singulator had been demonstrated and that it was not too speculative for distribution.
[8] The dissent expresses a concern that the majority substitutes itself for the trial court and "exempts itself" from the findings required by § 61.08(2), Fla. Stat. (2007). To the contrary, we find that the trial court made appropriate findings as to five of the seven statutory factors. As to factors (d) and (g), however, there are only presently adequate funds available to the former wife by virtue of the equitable distribution, and there is a likelihood that this may change. Two unique and undisputed facts support a nominal alimony award here: the former husband's current income is likely to change based on the success or failure of the Singulator and RT Solutions, and the former wife lacks employment and health insurance. Because it will be several years before she can obtain Medicare coverage, these are factors "necessary to do equity and justice between the parties" (§ 61.08(2)) and matters that will allow the trial court to consider, in later years, modification of the alimony award if there is a substantial change in circumstances. Our instruction to award nominal permanent periodic alimony finds ample support in the case law. Schmidt v. Schmidt, 997 So.2d 451, 454 (Fla. 2d DCA 2008); Blanchard v. Blanchard, 793 So.2d 989, 992 (Fla. 2d DCA 2001); Squindo v. OsunaSquindo, 943 So.2d 232, 237 (Fla. 3d DCA 2006); Misiak v. Misiak, 898 So.2d 1159, 1160 (Fla. 5th DCA 2005).
[9] In Barbieri v. Barbieri, 582 So.2d 640 (Fla. 3d DCA 1991), cited by the trial court in the amended final judgment, a minor child was residing in the home at the time of the lump sum award. The former husband in that case also received all of the former wife's one-half interest in his plumbing business as part of award.
[10] Upon remand, the parties (guided by their counsel and this opinion) may be able to reflect on the inherent problems of jointly owning certain property together (as a result of the Singulator and RT Solutions interests) after dissolution of the marriage, and may consider instead a settlement in which the former husband's condominium interest, some part of it, or some other asset is exchanged for the former wife's interest in the patent application and company. What is abundantly clear from this record, however, is that as a matter of equity and need, the former wife may not exit the marriage with both 70% of the very substantial marital assets and a substantial claim on the former husband's patent application and company.
[11] Nor has the majority found any such authority. See supra n. 8. The other three cases cited by the majoritySchmidt v. Schmidt, 997 So.2d 451, 454 (Fla. 2d DCA 2008); Blanchard v. Blanchard, 793 So.2d 989, 992 (Fla. 2d DCA 2001); Misiak v. Misiak, 898 So.2d 1159, 1160 (Fla. 5th DCA 2005)are all cases in which there was a clear and present need for an award of alimony, but an inability to pay. As the trial court explained in Schmidt, 997 So.2d at 454, in such a circumstance, "[o]nce the trial court found that the Wife was entitled to be awarded permanent periodic alimony, it was required to do just thataward her permanent periodic alimony, even if only a nominal amount." In our case, "the former wife's present need for permanent periodic alimony was not established." See supra p. 645. Final Judgments of Dissolution should divorce parties, not insert placeholders for future litigation based upon speculation. I hesitate to think what the result might be in this case if the former wife were the inventor. See Kennedy v. Kennedy, 622 So.2d 1033, 1036 (Fla. 5th DCA 1993).
[12] The former wife testified she also consulted Dr. Dudley in 2000 and 2001, but Dr. Dudley had no record of any such consultations.