# Third District Court of Appeal

## State of Florida

Opinion filed May 22, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2123
Lower Tribunal No. 17-29075
_____

## The Florida International University Board of Trustees,
Appellant/Cross-Appellee,

vs.

## Signal Safe, Inc., a Florida Corporation,
Appellee/Cross-Appellant.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Oscar Rodriguez-Fonts, Judge.

Dutton Law Group P.A., and Sheridan Weissenborn, for appellant/cross-appellee.

VLP Copenhaver Espino, Mike Piscitelli, and Kristen M. Jimenez (Fort Lauderdale), for appellee/cross-appellant.

Before SCALES, LINDSEY, and MILLER, JJ.

MILLER, J.

This dispute implicates the application of sovereign immunity. Appellant, The Florida International University Board of Trustees ("FIU"), appeals from an order denying its motion to dismiss a negligence action filed by appellee, Signal Safe, Inc.  Signal Safe cross-appeals the dismissal of its breach of contract claim.  We have jurisdiction.  See Fla. R. App. P. 9.130(a)(3)(F)(ii).  For the reasons set forth below, we reverse as to the appeal and affirm as to the cross-appeal.

## BACKGROUND

The facts underlying this case are not unfamiliar to the court.  This is the third appeal before us involving a series of contracts executed between the Florida Department of Transportation ("FDOT") and FIU for the testing of a patented traffic control device.  In a companion case, Irwin v. Signal Safe, Inc., 382 So. 3d 766 (Fla. 3d DCA 2024), we reversed an order denying the application of sovereign immunity against an individual FIU employee and, in doing so, articulated the facts relevant to the instant analysis.  See also Zisis v. Signal Safe, Inc., 382 So. 3d 772, 777 (Fla. 3d DCA 2024) (finding sovereign immunity barred similar claim against second employee).  As salient here,

> This dispute finds its genesis in a series of contracts executed between the Florida Department of Transportation ("FDOT") and FIU.  Under the terms of the contracts, FIU agreed to evaluate the performance of traffic reinforcement devices

2

manufactured by Signal Safe in simulated storm conditions using the Wall of Wind, an engineering testing facility located on campus. Dr. Irwin was designated as a "co-principal investigator." After performing testing, the team of professionals involved reported unfavorable results to FDOT. Dr. Irwin allegedly also published the findings in a public presentation to FDOT.

Signal Safe subsequently filed suit in the circuit court against FIU, Dr. Irwin, and Dr. Ioannis Zisis, the "principal investigator" assigned to the project. . . .

The complaint proceeded through several different iterations. In the operative pleading, the Fifth Amended Complaint, Signal Safe alleged that Dr. Irwin exceeded the scope of his employment by opining as to the efficacy of the traffic devices and engaging in unlicensed engineering that extended beyond the bounds of the teaching exception codified in section 471.0035, Florida Statutes (2022). See id. ("For the sole purpose of teaching the principles and methods of engineering design, . . . a person employed by a public postsecondary educational institution . . . is not required to be licensed under the provisions of this chapter as a professional engineer."). In addition, Signal Safe asserted Dr. Irwin committed defamatory torts by publishing and presenting the results of the testing.

Irwin, 382 So. 3d at 769.

As against FIU, the operative complaint asserted negligence and breach of contract claims. The breach of contract count alleged that Signal Safe was an intended third-party beneficiary of the contracts between FIU and FDOT. Both counts contained general damages clauses premised upon the theory that the state suspended further use of Signal Safe's traffic control device as a precautionary measure pending the completion of further research.

FIU moved to dismiss the complaint. Included among its asserted bases for relief was the two-fold contention that: (1) sovereign immunity precluded the negligence claim because any damages were purely economic; and (2) any notion Signal Safe was an intended third-party beneficiary was soundly refuted by the attachments to the complaint. The trial court dismissed the breach of contract claim, and this appeal and cross-appeal followed.

## STANDARD OF REVIEW

We conduct a de novo review of an order adjudicating the application of sovereign immunity. See Dist. Bd. of Trs. of Mia. Dade Coll. v. Verdini, 339 So. 3d 413, 417 (Fla. 3d DCA 2022). In considering the propriety of a ruling on a motion to dismiss, the reviewing court is constrained by consideration of only those facts alleged within the four corners of the complaint, along with any incorporated attachments. See Univ. of S. Fla. Bd. of Trs. v. Moore, 347 So. 3d 545, 547–48 (Fla. 2d DCA 2022).

## ANALYSIS

In Florida, the state and its subdivisions are shielded from civil liability, unless sovereign immunity is waived by legislative enactment or constitutional amendment. See Art. X, § 13, Fla. Const. Because sovereign immunity is the rule, not the exception, a state agency is insulated from

4

liability absent an explicit and unambiguous waiver.  See City of Miami v. Robinson, 364 So. 3d 1087, 1091 (Fla. 3d DCA 2023).

The Florida Legislature has waived sovereign immunity for tort claims, "subject to the limitations specified in [section 768.28, Florida Statutes (2022)]." § 768.28(1), Fla. Stat.  That statute provides, in pertinent part:

> In accordance with [article X, section 13 of the Florida Constitution], the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.  Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

Id.

By the plain language, the tort waiver self-limits to claims involving "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission" of a state agent.  Id.  Consistent with this narrow language, reviewing courts have determined that suits seeking purely economic damages are barred by sovereign immunity.  See City of Fort Lauderdale v. Tropical Paradise Resorts, LLC, 372 So. 3d 663, 667 (Fla. 4th DCA 2023); see also City of Pembroke Pines v. Corr. Corp. of Am., Inc., 274

5

So. 3d 1105, 1113 (Fla. 4th DCA 2019) (finding claims for "economic damages framed in counts for declaratory relief, promissory estoppel, tortious interference with contract, and tortious interference with advantageous business relationship" were barred by sovereign immunity because they "lack[ed] a claim for personal injury, wrongful death, or injury or loss of property"); County of Brevard v. Miorelli Eng'g, Inc., 677 So. 2d 32, 33–34 (Fla. 5th DCA 1996), quashed on other grounds, 703 So. 2d 1049 (Fla. 1997) (holding claim for "[f]raud in the inducement causing only economic loss" was barred under doctrine of sovereign immunity because it did not "fit within any of those categories of injury or loss enumerated in the statute").

While there is no explicit analogous statutory provision waiving sovereign immunity for breach of contract claims, it is well-settled that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984). This waiver, however, is narrowly restricted to express, written contracts. See id. at 6; see also Dep't of Transp. v. United Cap. Funding Corp., 219 So. 3d 126, 135 (Fla. 2d DCA 2017) ("[W]here the government has entered into an express

6

written contract that it is statutorily authorized to enter, sovereign immunity cannot protect it from the same contract rules that govern the performance of the express written contract obligations of a private party to a contract.").

Against these principles, we examine the instant case. FIU contends that the allegations in the negligence count were insufficient to overcome sovereign immunity because Signal Safe failed to identify any injury or loss of property, as is statutorily required, in the operative complaint. We agree. Signal Safe alleged only that it suffered generalized economic damages as the result of the suspension of use of its product.

Nonetheless, Signal Safe urges affirmance on the grounds that negligence rendered its patent entirely valueless and caused it to incur business losses. While arguably sufficient to satisfy the statute, this theory of liability was not framed within the complaint. See Gulbrandsen v. Gulbrandsen, 22 So. 3d 640, 644 (Fla. 3d DCA 2009) (confirming "a patent is personal property" in equitable distribution case); Krauser v. BioHorizons, Inc., 903 F. Supp. 2d 1337, 1348 (S.D. Fla. 2012), aff'd, 622 Fed. Appx. 890 (11th Cir. 2015) ("Patents have attributes of personal property and therefore may be assigned and transferred.").

Further, to the extent that Signal Safe contends in the cross-appeal that the trial court erred in rejecting its breach of contract claim, it is well-

7

settled that a non-signatory must establish it was an intended third-party beneficiary "[t]o claim the protection of th[e] contract." Esposito v. True Color Enters. Constr., Inc., 45 So. 3d 554, 555 (Fla. 4th DCA 2010). Indeed, a non-signatory may not sue to enforce the terms of a contract if the benefit is merely incidental or consequential. See Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1030–31 (Fla. 4th DCA 1994). Consequently, third-party beneficiary status is only conferred "if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party." Id. at 1031.

Here, the complaint alleged "Signal Safe was an intended third-party beneficiary of the Agreement," but the integrated contractual documents were devoid of any such intent. Instead, the original contract and work orders reflected that FDOT "retain[ed] [FIU] to furnish certain services, information and items as described in specific, separate [orders]," and "[a]ll work under each [order]" was to be "performed by [FIU] to the satisfaction of [FDOT]." As attachments to the complaint are controlling in the face of contradictory conclusory allegations, we find no error in the dismissal of this count. See Skupin v. Hemisphere Media Grp., Inc., 314 So. 3d 353, 356 (Fla. 3d DCA 2020); see also Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("[W]here the allegations of the complaint

8

are contradicted by the [attachments], the plain meaning of the [attachments] will control."); <u>Hoffman v. Boyd</u>, 698 So. 2d 346, 349 (Fla. 4th DCA 1997) ("The plain language of the written contracts attached as an exhibit to the complaint would control over any contrary allegations in any subsequent amended complaint."); <u>Haslett v. Broward Health Imperial Point Med. Ctr.</u>, 197 So. 3d 124, 127 (Fla. 4th DCA 2016) ("Where the exhibits negate the cause of action asserted, they must control."). Accordingly, we reverse the order on appeal and affirm the order on cross appeal.[1]

Affirmed in part; reversed in part; and remanded for further proceedings.

---

[1] Our reversal is without prejudice to amending the complaint.